# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:11cv178

| | | |
|---|---|---|
| **DEERBORNE COTTAGES, LLC,** | ) | |
| **a North Carolina Limited Liability** | ) | |
| **Corporation, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | |
| **FIRST BANK, Successor to THE** | ) | |
| **BANK OF ASHEVILLE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

Pending before the Court are the Motions to Dismiss filed by Defendant

Federal Deposit Insurance Corporation ("FDIC"), as Receiver for the Bank of

Asheville [# 13], Defendant G. Gordon Greenwood [# 19], Defendant First Bank

[# 21], and Defendant Raynia J. White [# 28].   Plaintiffs brought this action

against Defendants asserting a breach of contract claim arising out of an oral

agreements that The Bank of Asheville would provide future funding for the

development of vacation rental cottages on a parcel of property Plaintiff Deerborne

Cottages, LLC ("Plaintiff Deerborne") purchased in 2009.  In addition, Plaintiffs

assert several claims arising out of the alleged misrepresentations made by

Defendants Greenwood and White related to the future funding for the development. The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the Motions to Dismiss filed by Defendants FDIC, Greenwood, and White, and **GRANT** the Motion to Dismiss filed by Defendant First Bank.

## I.    Background

Plaintiff Deerborne is a North Carolina Limited Liability Company. (Pls.' Compl. ¶ 1.) Plaintiffs Michael S. Robinson, Clarence F. McLean, and Scoville Roberts (collectively, the "Individual Plaintiffs") are all residents of North Carolina and partners in Plaintiff Deerborne. (Id. ¶¶ 2-4; Ex. A to Pls.' Compl. at p. 3.) Plaintiff Robinson is the managing agent of Plaintiff Deerborne. (Pls.' Compl. ¶ 15.)

During the summer of 2008, Plaintiffs became interested in purchasing a seventeen acre tract of land in Buncombe County in order to develop multiple vacation rental cottages on the property. (Id. ¶ 12.) In order to fund this development, Plaintiffs began negotiating with Defendants Greenwood and White. (Id. ¶¶ 13-14.) Defendant Greenwood was the President and Chief Executive Officer of The Bank of Asheville. (Id. ¶ 14.) Defendant White was the Assistant Vice President of The Bank of Asheville. (Id. ¶ 16.) Both individuals are North

Carolina residents.  (Id.  ¶¶ 8-9.)

Plaintiffs and Defendants Greenwood and White discussed constructing up to twenty-five rental cottages on the property and phasing in twenty cottages over a four year period.  (Id.  ¶ 13.)   Plaintiffs estimated the total cost for the project at $2,800,000.00.  (Id. ¶ 14.)  Shortly thereafter, Plaintiffs submitted a written business plan to Defendant Greenwood setting forth projected cash flow from the rental cottages and estimating the initial development costs for the project at $1,257.000.  (Id. ¶ 15; Ex. A to Pls.' Compl.)   The Bank of Asheville then notified Plaintiffs that Plaintiff Robinson was pre-approved for a loan to purchase the property.  (Pls.' Compl. ¶ 16; Ex. B. to Pls.' Compl.)    Plaintiffs entered into a contract for the purchase of the property approximately two weeks later.  (Pls.' Compl. ¶ 18.)

Plaintiffs, however, contend that they only entered into the contract to purchase this property because of representations made by Defendants Greenwood and White regarding the continued funding of the development.  (Id.  ¶¶ 17-18.) Specifically, the Complaint alleges that:

> both Greenwood and White agreed to the funding of the initial construction of five cottages on the subject property and further represented that subsequent funding would be made available during the phased in development with the construction of five additional cottages each year based upon the projected business plan presented to them up to the total sum of $2,800,000.

(Id. ¶ 17.)   Plaintiffs also allege that Defendants Greenwood and White represented to Plaintiffs that rental of the cottages on even a yearly basis would be sufficient to service the debt, and that by presenting the continued development and business plan on a yearly basis, The Bank of Asheville would continue to fully fund the completion of the development.  (Id. ¶ 43.)  Plaintiffs contend that each of these representations was false and, Defendants knew at the time that The Bank of Asheville was not going to fund the development past the initial or secondary financing.  (Id. ¶ 44.)

On January 28, 2009, The Bank of Asheville provided the Plaintiffs with a loan commitment letter in the amount of $1,204,734.00 in order to fund the purchase and development of the property, including the building of five cottages on the property.  (Id. ¶ 22; Ex. D to Pls.' Compl. at p. 1.)   This loan required unconditional guarantees from the Individual Plaintiffs.  (Pls.' Compl. ¶ 22; Ex. D. Pls.' Compl. at p. 3.)  Two days later, Plaintiff Deerborne purchased the property based on the representations of Defendants Greenwood and White that The Bank of Asheville would fund the continued development of the property, not just the initial phase.  (Pls.' Compl. ¶ 23.)

At the closing, Plaintiff Deerborne executed a Promissory Note in favor of the The Bank of Asheville in the amount of $1,204,734 secured by a first deed of

trust on the subject property.  (Id. ¶ 24.)  This Promissory Note was to mature a

year later, on January 30, 2010.  (Ex. F to Pls.' Compl. at p. 1.)  The Promissory

Note provided that, "[t]his Note evidences a straight line of credit.  Once the total

amount of principal has been advanced, Borrower is not entitled to further loan

advances." (Ex. F. to Pls.' Compl. at p. 2.)  The Individual Plaintiffs also executed

Unconditional Guarantees in favor of The Bank of Asheville as to the indebtedness

of Plaintiff Deerborne.  (Pls.' Compl. ¶ 25.)

Plaintiff Deerborne and The Bank of Asheville also executed a Deed of

Trust.  (Id.; Ex. G to Pls.' Compl.)  The amount owed to The Bank of Asheville at

the time was $552,500.00, "and the maximum principal amount, including present

and future obligations, which may be secured by this Deed of Trust at any time is

One Million Two Hundred Four Thousand Seven Hundred Thirty-four & 00/100

Dollars ($1,204,734.00.)"  (Ex. G. to Pls.' Compl. at p. 2.)   In addition, the Deed

of Trust provided that:

> The Deed of Trust, together with any Related Documents, constitutes
> the entire understanding and agreement of the parties as to the matters
> set forth in this Deed of Trust.  No alteration of or amendment to this
> Deed of Trust shall be effective unless given in writing and signed by
> the party or parties sought to be charged or bound by the alteration or
> amendment.

(Ex. G. to Pls.' Compl. at p. 11.)

Subsequently, Plaintiff Deerborne constructed five cottages on the property.

(Pls.' Compl. ¶ 27.)  Because of cost overruns, Plaintiffs approached The Bank of Asheville about securing additional funds in the amount of $107,000.  (Id.)  The Bank of Asheville agreed to provide an additional loan to finance the construction cost overruns.  (Id. ¶ 28; Ex. I to Pls.' Compl. at p. 1.)  On October 9, 2009, Plaintiff Deerborne executed a Promissory Note and Deed of Trust in favor of The Bank of Asheville in the amount of $107,000.  (Pls.' Compl. ¶ 29; Ex. J to Pls.' Compl.; Ex. K to Pls.' Compl.)  Like the prior document, this Promissory Note provided that once the total amount of principal was advanced, Plaintiff Deerborne was not entitled to further advances.  (Ex. J to Pls.' Compl. at p. 2.)

After the loans came due on January 30, 2010 (Ex F to Pls.' Compl. at p. 1; Ex. J to Pls.' Compl. at 1), Plaintiff Robinson presented Defendant Greenwood with a proposal for the second phase of the development, which included building five additional cottages and other structures, (Pls.' Compl. ¶ 31; Ex. L to Pls.' Compl. at p. 1).  Defendant White, however, informed Plaintiffs that The Bank of Asheville would not fund the second phase of the development.  (Pls.' Compl. ¶ 32.)  On February 5, 2010,  Defendants White and Greenwood presented Modification Agreements on both loans that extended the due date of the indebtedness through March 1, 2010.  (Id. ¶ 33.)  Plaintiffs then defaulted on their obligations under the Promissory Notes and Modification Agreements.  (Id. ¶ 34.)

Approximately one year after Plaintiffs defaulted on their obligations, the FDIC shut down The Bank of Asheville.  (Id. ¶¶ 5-6.)   As receiver for The Bank of Asheville, the FDIC assumed the benefits and obligations under the Promissory Notes, Deeds of Trust, Guaranties, and Modification Agreements between Plaintiffs and The Bank of Asheville.  (Id. ¶ 36.)  Subsequently, the FDIC and Defendant First Bank entered into a Purchase and Assumption Agreement pursuant to which Defendant First Bank assumed the benefits and obligations under the Promissory Notes, Deeds of Trust, Guaranties, and Modification Agreements between Plaintiffs and The Bank of Asheville.  (Id. ¶ 37.)

Plaintiffs then brought an action in the Superior Court of Buncombe County against Defendants.  The Complaint asserts a claim for breach of contract, negligent misrepresentation, and unfair and deceptive trade practices against all the Defendants, as well as a fraud claim against Defendants First Bank, Greenwood, and White.  Subsequently, Defendant FDIC removed the action to this Court pursuant to 12 U.S.C. § 1819(b)(2)(A)-(B) and 28 U.S.C.§ 1446.  Defendants then filed separate motions to dismiss on a number of grounds.  Defendants' motions are now properly before this Court.

## II.    Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the

complaint states a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  In considering a defendant's motion to dismiss, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92.  Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."  Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  Nor will mere labels and legal conclusions suffice.  Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief

that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974;

see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,

556 U.S. ____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255.

The mere possibility that the defendants acted unlawfully is not sufficient for a

claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256;

Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must

move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570,

127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Where a party's allegations sound in fraud, however, the allegations must

also satisfy the heightened pleading standards of Rule 9. Cozzarelli v. Inspire

Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008); Anderson v. Sara Lee

Corp., 508 F.3d 181, 188 (4th Cir. 2007). Rule 9(b) provides that when "alleging

fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 applies not

only to claims asserting common law fraud, but to all claims where the allegations

have the substance of fraud. Cozzarelli, 549 F.3d at 629. A claim is subject to

dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b).  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).

## III.    Analysis

## A.    The FDIC's Motion to Dismiss

The FDIC moves to dismiss all the claims asserted against it on the grounds that all of the claims are barred by North Carolina's statute of frauds applicable to commercial loans and the parol evidence rule.  (Def. FDIC's Memo. Support Mot. Dismiss at p. 9, 11.)    In addition, the FDIC contends that pursuant to 12 U.S.C. § 1825(b)(3) Plaintiffs' claims for punitive damages, treble damages, and attorneys' fees are statutorily barred.  Finally, in its Reply brief, Defendant FDIC contends for the first time that Plaintiffs' negligent misrepresentation claim fails to comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.   (Def. FDIC's Reply in Support of  Mot. Dismiss p.  4.)  Plaintiffs concede that the breach of contract claim is barred by the applicable statute of frauds (Pls.' Resp. to Def. FDIC's Mot. Dismiss at p. 2.), but contends that the negligent misrepresentation and unfair and deceptive trade practices claims are not subject to dismissal.

<u>1.</u>     <u>The breach of contract claim</u>

The Complaint alleges that the FDIC breached an oral agreement with

Plaintiffs to provide continued financial support for a period of four years to

Plaintiffs for the development of up to twenty cottages on the property.  (Pls.'

Compl. ¶¶ 39-40.)   The applicable statute of frauds in North Carolina, however,

provides that:

> No commercial loan commitment by a bank, savings and loan association, or credit union for a loan in excess of fifty thousand dollars ($50,000) shall be binding unless the commitment is in writing and signed by the party to be bound. As used in this section, the term "commercial loan commitment" means an offer, agreement, commitment, or contract to extend credit primarily for business or commercial purposes and does not include charge or credit card accounts, personal lines of credit, overdrafts, or any other consumer account. Offers, agreements, commitments, or contracts to extend credit primarily for aquaculture, agricultural, or farming purposes are specifically exempted from the provisions of this section.

North Carolina Gen. Stat. § 22-5.  Because the alleged promise made by The Bank

of Asheville to Plaintiffs was a commercial loan by a bank in excess of $50,000, it

had to be in writing and signed by the party to be bound to be enforceable.  <u>Id.</u>

Moreover, neither of the applicable exceptions to the statute of frauds applies in

this case.  <u>See</u> <u>Rice v. Vitalink Pharmacy Servs., Inc.</u>, 124 F. Supp. 2d 343

(W.D.N.C. 2000) (Thornburg, J.) (discussing the exceptions to the statute of frauds

- equitable estoppel and the doctrine of part performance).  As Plaintiffs concede in

their Response to the FDIC's Motion to Dismiss, the alleged oral promise for The Bank of Asheville to loan Plaintiffs $2,800,000 to develop the property at issues is unenforceable, and, therefore, the breach of contract claims is subject to dismissal. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 13] as to Count One.

> 2.    The unfair and deceptive trade practices claim

In order to make out a *prima facie* claim for unfair and deceptive trade practices, a plaintiff must show that: (1) the defendant committed an unfair or deceptive act or practice; (2) that this act or practice was in or affecting commerce; and (3) that the act or practice proximately caused the plaintiff's injury. Gray v. N.C. Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000); Hospira Inc. v. Alphagary Corp., 671 S.E.2d 7, 12 (N.C. Ct. App. 2009); Sessler v. March, 551 S.E.2d 160, 167 (N.C. Ct. App. 2001); Dealers Supply Co., Inc. v. Cheil Indus., Inc., 348 F. Supp. 2d 578, 591 (M.D.N.C. 2004). A practice is unfair if it "'is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" Branch Banking and Trust Co. v. Thompson, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992) (quoting Johnson v. Phoenix Mut. Life Ins. Co., 266 S.E.2d 610, 621 (N.C. 1980)); Sessler, 551 S.E.2d at 167.  A practice is deceptive where it has the tendency or capacity to deceive.  Thompson, 418 S.E.2d at 699; Sessler,

551 S.E.2d at 167.  Ultimately, however, "[w]hether a particular act is unfair or deceptive, depends on the fact surround the transaction and the impact on the marketplace."  Cheil Indus., 348 F. Supp. 2d at 591.  As the Fourth Circuit has explained, this is a "highly fact-specific inquiry."  South Atlantic Ltd. P'ship of Tenn., L.P. v. Riese, 284 F.3d 518, 535 (4th Cir. 2002).

Where a claim for unfair and deceptive trade practices is based "on a theory of misrepresentation or fraud, a plaintiff must show that a defendant's words or conduct possessed 'the tendency or capacity to mislead' or create the likelihood of deception.'" Hospira, 671 S.E.2d at 12 (quoting Marshall v. Miller, 276 S.E.2d 397, 403 (1981)).  Moreover, a plaintiff does not have to show actual deception to prevail, he or she need only demonstrate that the acts of defendant  "possessed the tendency or capacity to mislead or create the likelihood of deception." RD & J Props. v. Lauralea-Dilton Enters., LLC, 600 S.E.2d 492, 500-501 (N.C. Ct. App. 2004).

As a threshold matter, Defendant FDIC is correct that Plaintiffs may not maintain a claim for unfair trade practices based only on the alleged breach of an unenforceable oral contract between the parties.  See Thompson, 418 S.E.2d at 700 ("It is well recognized . . . that actions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . and that a mere breach of contract,

even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1."); Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc., 477 S.E.2d 262, 266 (N.C. Ct. App. 1996); Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989) (applying North Carolina law). Plaintiffs' unfair trade practices claim, however, is not based on the alleged breach of this oral agreement but, rather, on the alleged misrepresentations by Defendants Greenwood and White regarding the continued funding of the development. (Pls.' Compl. ¶¶ 17, 23, 56-57.) Put simply, Plaintiffs allege that Defendants Greenwood and White made affirmative misrepresentations during Plaintiffs' dealings with The Bank of Asheville, and that Plaintiffs relied upon these misrepresentations in going forward with the project. As various courts have held, affirmative misrepresentations such as these can form the basis of an unfair trade practices claim in certain circumstances. See e.g., Process Components, Inc. v. Baltimore Aircoil Co., Inc., 366 S.E.2d 907, 911 (N.C. Ct. App. 1988); Cheil Indus., 348 F. Supp. 2d at 594-95; Varnall, Struck & Assocs., Inc. v. Lowe's Cos., Inc., No. 5:06cv68, 2008 WL 1745880 (W.D.N.C. Apr. 11, 2008) (Reidinger, J.). Neither the statute of frauds nor the parol evidence rule bars Plaintiffs' tort claims as a matter of law. Although whether or not Plaintiffs can prevail on such a claim will ultimately depend on the specific facts in this case, the allegations in the Complaint

are sufficient to survive dismissal at this stage of the proceedings. Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss [# 13] as to Count Four.

### 3. The negligent misrepresentation claim

Under North Carolina law, the tort of negligent misrepresentation requires that the plaintiff: (1) justifiably rely; (2) to plaintiff's detriment; (3) on information prepared without reasonable care; (4) by an individual owing the plaintiff a duty of care. Guyton v. FM Lending Servs, Inc., 681 S.E.2d 465, 478 (N.C. Ct. App. 2009); Hospira, 671 S.E.2d at 12; see also Geo Plastics v. Beacon Dev. Co., No. 10-1656, 2011 WL 2213718, at *3 (4th Cir. Jun. 8, 2011) (applying North Carolina law) (unpublished). Defendant FDIC does not contend that the Complaint fails to allege the necessary elements of a negligent misrepresentation claims. Rather, Defendant FDIC contends that the claim fails to meet the heightened pleading standards of Rule 9(b) because it does not allege the time, place, recipients, or circumstances of the alleged oral misrepresentations. (Def. FDIC's Reply in Support of Mot. Dismiss p. 4.)

As Defendant FDIC correctly points out, the United States District Court for the Middle District of North Carolina has held that Rule 9(b) applies to claims for negligent misrepresentation under North Carolina law. See Cheil Indus., 348 F.

Supp. 2d at 590; <u>CBP Res., Inc. v. SGC Control Servs. Inc.</u>, 394 F. Supp. 2d 733, 740 (M.D.N.C. 2005). In a subsequent unpublished opinion, however, the Fourth Circuit held that Rule 9(b) did not apply to a negligent misrepresentation claim under Maryland law, which is substantially similar to a claim under North Carolina law. <u>Baltimore Cnty. v. Cigna Healthcare</u>, 238 F. App'x 914, 921-22 (4th Cir. 2007) (unpublished) (holding that Rule 9(b) does not apply to a negligent misrepresentation claim even where the plaintiff made allegations of fraudulent conduct; Rule 9(b) only applies to the fraud claim); <u>Higgins v. Spence & Spence, P.A.</u>, No. 5:07cv33, 2008 WL 506187, at *4 (E.D.N.C. Feb. 21, 2009) (holding that Rule 9(b) does not apply to North Carolina negligent misrepresentation claim); <u>Ulyssix Techs., Inc. v. Orbital Network Eng'g, Inc.</u>, No. ELH-10-02091, 2011 WL 631145, at *8 (D. Md. Feb. 11, 2011) (holding that Rule 9(b) does not apply to a Maryland negligent misrepresentation claim). Although not binding precedent, this Court is persuaded by the Fourth Circuit's majority opinion in <u>Cigna Healthcare</u>, in which the Court rejected the very position advanced by Defendant FDIC in this case. Accordingly, the Court finds that Rule 9(b) does not apply to Plaintiffs' negligent misrepresentation claim, and, thus, Plaintiffs need not satisfy the heightened pleading requirements of Rule 9(b) as to Count Three. The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to

Count Three.

4.    Treble damages, punitive damages, and attorneys' fees

The Complaint seeks treble damages and attorneys fees against Defendant

FDIC.  (Pls.' Compl. ¶¶ 58-59.)  In addition, the Complaint asserts a claim for

punitive damages against Defendant FDIC.  (Id. ¶ 61.)   The FDIC contends that

Plaintiffs may not recover treble damages, punitive damages, or attorneys' fees

against it because each of these imposes a penalty or fine and is barred by 12

U.S.C. § 1825(b)(3), which provides that the FDIC, when acting as receiver, "shall

not be liable for any amounts in the nature of penalties or fines . . . ."

As several Courts have held, Section 1825(b)(3) bars a plaintiff from

recovering punitive damages against the FDIC after the commencement of the

receivership.  Cassese v. Wash. Mut., Inc., 711 F. Supp. 2d 261, 273 (E.D.N.Y.

2010) ("The Court thus finds that Section 1825(b), by its plain language, bars

punitive damages from being assessed against the FDIC after receivership has

commenced."); Poku v. FDIC, No. RDB-08-1198, 2011 WL 1599269 (D. Md.

Apr. 27, 2011) ("As punitive damages represent penalties, the plain language of

Section 1825(b) precludes the imposition of punitive damages on the FDIC as

Receiver."); Alexander v. Wash. Mut., Inc., No. 07-4426, 2011 WL 2559641, at

*3-4 (E.D. Pa. Jun. 28, 2011.).  The Court agrees with those Courts that have held

that the plain language of Section 1825(b) bars a plaintiff from recovering punitive

damages against the FDIC as receiver because punitive damages are in the nature

of a penalty.  The Court **RECOMMENDS** that the District Court dismiss the

punitive damages claim asserted against Defendant FDIC.

Similarly, Plaintiffs claim for treble damages pursuant to N.C. Gen. Stat. §

75-16 is also barred by Section 1825 because an award of treble damages for an

unfair or deceptive trade practice, like an award of punitive damages, is in the

nature of a penalty.  See Delta Marine, Inc. v. Whaley, 813 F. Supp. 414, 416-17

(E.D.N.C. 1993) ("Chapter 75 awards treble damages upon a showing of an unfair

and deceptive trade practice, thus the act is punitive in nature."); Pinehurst, Inc. v.

O'Leary Bros. Realty, Inc., 338 S.E.2d 918, 925 (N.C. Ct. App. 1986) (holding that

a plaintiff may not recover treble damages and punitive damages under Chapter 75

because a treble damage award already has a punitive component and an award of

punitive damages would be duplicative); See also Horn v. FDIC, No. ELH-11-

2127, 2011 6132309, at *1 (D. Md. Dec. 8, 2011) (holding that treble damages of

Maryland Wage Payment and Collection Law is in the nature of a penalty or fine

and, thus, barred by Section 1825(b)(3)); Alexander, 2011 WL 2559641, at *5

(holding that treble damages under the Real Estate Settlement Procedures Act is

punitive in nature and barred by Section 1825(b)).  Accordingly, the Court

**RECOMMENDS** that the District Court dismiss the claim for treble damages against Defendant FDIC.

Finally, although Defendant FDIC contends that an award of attorneys' fees against it is in the nature of a penalty and is also barred by Section 1825(b), Defendant FDIC has not provided the Court with any authority supporting this proposition.[1]  Because Defendant FDIC has not cited the Court to any legal authority supporting is contention that an award of attorneys' fees is punitive in nature and is barred by Section 1825(b), the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss to the extent Defendant FDIC seeks to dismiss Plaintiffs' claim for attorneys' fees.

### B.   Defendant Greenwood's Motions to Dismiss

Defendant Greenwood moved to dismiss the Complaint solely on the ground that all the claims are based on an unenforceable oral agreement.  (Def. Greenwood's Mot. Dismiss at 1.)  Defendant Greenwood, however, did not file a memorandum in support of his Motion to Dismiss, instead adopting the reasons set forth in the FDIC's memorandum.  (Def. Greenwood's Mem. in Support Mot.

---

[1]  Although Defendant FDIC contends that the United States Court of Appeals for the Ninth Circuit held in <u>Monrad v. FDIC</u>, 62 F.3d 1169, 1175 (9th Cir. 1995), that Section 1825(b)(3) prohibits an award of attorneys' fees, Defendant FDIC misstates the holding of <u>Monrad</u>.   In <u>Monrad</u>, the Ninth Circuit reversed an award of attorneys' fees against the FDIC based on the federal common law principal that in federal litigation, each side pays its own attorneys' fees.  62 F.3d at 1175.  The Court did not, as Defendant FDIC contends, hold that Section 1825(b) prohibits an award of attorneys' fees.  <u>Id.</u>

Dismiss at 1.)

As a threshold matter, Section 1825(b) has no bearing on the claims asserted against Defendant Greenwood, and Plaintiffs are not barred from pursuing punitive damages or treble damages against Defendant Greenwood. Moreover, Defendant FDIC is not even named in Count Two and the FDIC did not present the Court with any argument in its briefs as to whether the Complaint stated a claim for fraud. Although Defendant Greenwood attempts to rectify this error by belatedly offering in his reply brief a few sentences of argument as to why the fraud claim fails to comply with Rule 9(b), this Court cannot allow Defendant Greenwood to move to dismiss a claim for the first time in a reply brief. Defendant Greenwood made the decision to adopt the brief of the FDIC rather than file an independent memorandum; thus, he is limited to the arguments contained in the FDIC's brief.

For the reasons set forth in the Court's discussion of Defendant FDIC's Motion to Dismiss, the Court **RECOMMENDS** that the District Court **GRANT** Defendant Greenwood's Motion to Dismiss [# 19] as to Count One and **DENY** the motion as to the remaining claims.

### C. Defendant White's Motion to Dismiss

Defendant White moves to dismiss the Complaint on two grounds, that the claims are barred by the statute of frauds and the parole evidence rule. (Def.

White's Mot. Dismiss at 1; Def.'s Mem. Support Mot. Dismiss at 5-7.) While, as the Court discussed with regard to the FDIC's Motion to Dismiss, the breach of contract claim is barred by the statute of frauds; neither the statute of frauds nor the the parole evidence rule bars Plaintiffs' remaining claims as a matter of law. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** Defendant White's Motion to Dismiss [# 28] as to Count One and **DENY** the motion as to the remaining claims.[2]

### D. Defendant First Bank's Motion to Dismiss

#### 1. Plaintiffs' claims for fraud, negligent misrepresentation, unfair and deceptive trade practices, and punitive damages

Defendant First Bank and the FDIC entered into a Purchase and Assumption Agreement pursuant to which Defendant First Bank assumed the benefits and obligations under the Promissory Notes, Deeds of Trust, Guaranties, and Modification Agreements between Plaintiffs and The Bank of Asheville. (Pls.' Compl. ¶ 37.) Put simply, First Bank purchased the loans at issue between Plaintiffs and The Bank of Asheville. The Complaint, however, contains no factual allegations that Defendant First Bank or any employee of Defendant First Bank made any misrepresentations, omissions, engaged in any act that could

---

[2] The Court notes that Defendant White does not contend that the fraud claim does not satisfy Rule 9(b).

constitute an unfair or deceptive trade practice, or undertook any of the actions that form the basis of Plaintiffs' claims.  All of the alleged misrepresentations occurred prior to the time Defendant First Bank purchased Plaintiffs' loans from the FDIC.

Absent such factual allegations, the Court finds that the Complaint fails to state a claim against Defendant First Bank for fraud, negligent misrepresentation, or unfair and deceptive trade practices.  See Iqbal, 556 U.S. ____, 129 S. Ct. at 1949; Consumeraffairs.com, 591 F.3d at 255.  Moreover, the Complaint fails to allege any basis for holding Defendant First Bank liable for the actions of Defendants Greenwood and White or The Bank of Asheville, and Plaintiffs fail to offer any legal or factual argument in their Brief in Opposition to Defendant First Bank's Motion to Dismiss as to how Defendant First Bank is liable for the actions of these other individuals and entities.  Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 21] as to Counts Two through Five.

2.      The breach of contract claim against Defendant First Bank

As the Court previously explained, Plaintiffs may not assert a breach of contract claim based on an oral agreement for a commercial loan from The Bank of Asheville in excess of fifty thousand dollars.  North Carolina Gen. Stat. § 22-5.

Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to Count One.

### IV.    Conclusion

The Court **RECOMMENDS** that the District Court:

(1)    **GRANT in part** and **DENY in part** the Motion to Dismiss [# 13] filed by Defendant Federal Deposit Insurance Corporation.  The Court **RECOMMENDS** that the District Court **GRANT** the motion as to Counts One and Five, as well as the claims for treble damages and **DENY** the motion as to the remaining claims.

(2)    **GRANT in part** and **DENY in part** the Motions to Dismiss filed by Defendants G. Gordon Greenwood [# 19] and Raynia J. White [# 28]. The Court **RECOMMENDS** that the District Court **GRANT** the motions as to Count One and **DENY** the motions as to the remaining claims

(3)    **GRANT** the Motion to Dismiss [# 21] filed by Defendant First Bank and dismiss all the claims asserted against Defendant First Bank in the Complaint.

Signed: April 9, 2012

Dennis L. Howell
United States Magistrate Judge

**<u>Time for Objections</u>**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same.

**Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).